Stephen Labiak (SBN: 267138)
Law Offices of Stephen Labiak
1222 West Shaw Avenue
Fresno, California 93711
Tel: (559) 274-5145
Fax: (559) 221-5358
E-Mail: Stephen@labiaklaw.com

Attorneys for debtors

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

IN RE:

Teofilo Rodriguez

Christy Rodriguez

Case no: 19-11512-B-13F

**DCN: MHM-3**

**Response to Trustee's Objection to Confirmation of Chapter 13 Plan**

Confirmation Hearing:

Date: August 15, 2019
Time: 1:30 p.m.
Dept: B
Place: U.S. Courthouse 5th Floor Debt B.
Courtroom 13; 2500 Tulare Street
Fresno, CA 93721

Judge: Hon. Rene Lastreto II

The Trustee is correct in the basic fact laid out as to the means test and the law. But then proceeds to make several assumptions and apply them to Schedule J.

**Disposable income on the means test**:

The means test determines the disposable income. This has been calculated at less than the standard for a family of seven. This forces the conclusion that per the means test, zero dollars should go to the unsecured creditors. Therefore, any other mention to the means test is not reasonable.

**No facts articulated as to what reasonable is:**

Trustee only cites the IRS schedule as its basis for reasonable expenses. As this will be shown to not be the standard in determining actual expenses, trustee has not raised a claim that the expenses are not reasonable.

**Disposable income per Schedule J.**

Debtors are below the median income. Despite this agreed to fact, trustee is now trying to diving Congress' intent on what they meant to do or not to do. The Trustee then attempts to decide that Congress despite no indications what so ever, want the IRS standards used on Schedule J. Nowhere does it state what Congress intended in a situation similar to ours.

However, the IRS and this court have been clear on the use of these standards. *In Re Lopez*, 16-11072-B-13 states on page 12, lines 4-12 that the IRS standards and their application to the Bankruptcy Code are not similar. The IRS standards were for IRS agents in offers in compromise from taxpayers. Further down on page 13, lines 15-18, states that the IRS Standards are not consistence with use as allowable debtor expenses. The Trustee's attempt to use the IRS standards as allowable expenses on schedule J is incorrect for this reason.

Schedule J says "Estimate your expenses as of your bankruptcy filing date". Trustee claims the standard should be "actual". If Schedule J requires actual, then this completely skews the result. For example, my clients are incurring significant medical expenses to put braces on their children. This may require a one-time monthly expenditure in excess of $800 per child. So if this is done the month the bankruptcy is filed, the actual medical expense for the two children alone would be $1600. To put this number on line 11 of Schedule J would be objected to as this expense is not repeating month after month. However, based on an estimate of the total expense for the braces for the children of $8000, divided by the number of months in the plan, you arrive at $222.22 per month for this number. Even though in no actual month is this amount sent, the estimate on a per monthly basis is correct and is what is used.

There are also expenses that are on Schedule J that are not on the means test. For example, there is no place to put entertainment expense on the means test. However, there is a place for entertainment on the means test. Therefore it must be permissible to have a reasonable and necessary amount taken as an entertainment expense. The means test locks a debtor in for the amount for utilities,

2

2

Response to Trustee's Objection to Confirmation

8

Filed 08/01/19    Case 19-11512    Doc 46

while Schedule J is what is estimated to actually be. This can have a significant difference in the numbers, for example on electricity here in the valley given the necessity of having air conditioning on when it is 110 degrees outside.

### a. Housing + Storage Unit

This number has the debtors under by $209.68 per the trustee's standard. Given the living situation of the blended family of 4 adults and 3 children, there is currently another household's worth of furniture sitting in storage. The storage unit costs $177 per month. See attached Exhibit A of Ms. Rodriguez's second declaration for proof of payment. Instead of obtaining a larger house, debtors have opted for the house plus the storage unit. This is a reasonable and necessary decision as it would cost significantly more to move and incur a larger house and higher taxes and maintenance expenses, than to have the storage unit. The house and storage unit should be seen as a combined expense and as they are below the trustee's cited standard, this is reasonable and should be allowed.

Debtors mortgage payment is shown in Exhibit B of the Second Declaration of Rodriguez. It should be noted that this has increased by approximately $70 per month, that is not reflected in Schedule J. This increase and expense is reasonable and necessary in order for debtors to have a place to live.

### b. Home maintenance, repair, & upkeep

This is a couple of different sections. Debtors spends $35 per month on pest control. (Decl. of Rodriguez.) Given that the chemicals used can be toxic and dangerous if not applied correctly, it is reasonable and necessary to hire someone to do this job. Debtors, attorney pays $40 per month for his home, and $40 per month per business location that are about 1500 square feet. (Declaration of Stephen Labiak). As debtor pays less, the amount is reasonable.

As to the landscaping at $80 per month, debtor pays the gardener in cash. (Decl. of Rodriguez) As members of the family are older and Mr. Rodriguez has medical issues, it is reasonable and necessary to pay for someone to do this work. The average cost of a gardener ranges from $90-150, so paying $80 per month is a reasonable expense.

Debtors estimate, as schedule J asks for, $12,000 in near term major expenses that are needed on the home. (Decl. of Rodriguez.) Annualized out over 5 years this comes to $200 per month. This is

a reasonable way of calculating these needed repairs on the home. They are necessary for as these major problems are delayed in getting fixed, the bill to fix them and the additional damage caused will only increase the expense.

The attached Exhibit N to the Second Declaration of Rodriguez shows the various states of disrepair on the home for the estimates. The roof tiles are fraying, there are holes in the wall, the wood damage around the door frame, the missing tiles in the floor, and the worn out carpet. This shows some of the damages that the house needs to have repaired justifying the repair expenses debtors will incur.

Debtor also estimates that there will be on average of $50 per month of additional repairs that will be needed on the home. For example, $50.67 was spent at Home Depot per the bank statements of Exhibit M on 2/07 (Sec. Decl. of Rodriguez). A door knob needs to be replaced. Paint needs to be touched up. A sprinkler needs to be replaced. These are random occurrences that will happen, it is just a question of time. Kids tend to accelerate the happening of these random occurrences. Table 1400 allocates an average for a family of 5 or more of $1338 per year, or $111 per month, on upkeep of the home on average. Note this does include insurance, which is not broken out in these statistics. Debtors are estimating repairs $50 per month. This is therefore a reasonable number.

**c. Electricity**

The average PG&E bill is estimated to be $196.15 for a family size of slightly over 3 (3.17 on average). (Decl. of Labiak.) On a per person basis, this works out to approximately $61.88 per person, per month. There are 7 people in the household. This yields on a per person basis a reasonable average electricity bill of $433.14 per month. Debtors have claimed an Electricity expense of $366.38. It should also be acknowledged that PGE includes costal areas where temperatures and electric bills are typically lower. The additional expense is also justified to keep the temperature of the house reasonable when it is 110 outside. The proof of the expense is attached as Exhibit L. Debtors are below an average per person, debtors have actually made this expense, therefore it is reasonable. As to necessary, without electricity debtors would lose their jobs, become homeless and therefore could not pay any of their bills, therefore it is necessary.

**d. Water, sewer, etc.**

Debtors listed $122 as the expenses for this category. Attached as Exhibit C is the actual receipt and proof of payment. While this may fluctuate a bit, the estimate is close. Debtors does not have the opportunity to negotiate his water, sewer, and trash rates, so the bill is what it is without much input from the debtors. As debtors would prefer to not return to medieval times and to live without water, trash, and sanitation, this is a reasonable and necessary expense.

### e. Telephone

The debtors estimate to spend on average $331 per month on the cell phone bills. For proof of the expense, see Exhibit D. Referencing the Declaration of Stephen Labiak and the US Bureau of Labor Statistics, the average cell phone expenditure for the demographics for the debtors family is 2 persons under 25, 2 persons between 35-44, and 2 persons of 55-64. This yields a total average of $5794 annually, or $482.83 per month. Debtors are only claiming $331 per month, $150 less than average for their demographics. In addition, debtors are not even including their youngest child in this calculation. As debtors are significantly under the average, this is a reasonable expense. As to necessity, without cell phones, debtors would have no telecommunications services. In today's modern age, cell phones are required to do most anything. Given that it is estimated that above 90% of the population has a cell phone, this establishes that it is necessary to have in today's world.

### f. Other

This is debtor's internet/cable bill. The actual paid expense is attached s Exhibit E. This is a bundled package. As to the reasonable and necessary, the internet is necessary to function in today's world. It is required for education, research, employment, cooking, shopping, and maintaining one's health. Cable TV is necessary to get good reception and also to provide entertainment. Having entertainment gives one's life purpose. Without entertainment, debtors may not continue to work and therefore no creditors would get paid. The total of the estimated plan before taxes and insurance using Xfinity's latest plan offering is $167.14. Adding in extra equipment given our household size and taxes and fees yields our current bill estimate of $195.00 This works out to $28 per person in the house, per month, which is a reasonable and necessary amount to spend on the internet and cable.

### g. Transportation

#### 1. Transportation

See attached bills as Exhibit F, (Sec. Dec. of Rodriguez) for proof that this is what is spent. As to the necessity of this amount, the trustee chose as a standard the operating costs of two vehicles for the entire family. This is a family of 4 adults, and a near-adult driver plus another about to enter driver training. The mileage rate per the IRS is $0.58 per mile. Using the trustee's logic and using the IRS standard of $436, this results in 752 miles per month (436/.58), for the entire family, or 150 miles per person per month (752/5), which reduces to 5 miles per day (150/30), per person that drives. This is an unreasonable expectation by the trustee.

The one way trip from Madera to Fresno is approximately 23 miles. Ms. Rodriguez works in Fresno for Community Regional Medical Center. Going to work and coming home, 4 days a week yields 23 (miles) x 2 (roundtrip) x 4 (days) = 184 miles. Times 4.2 weeks per month is 772 miles. 752 miles per the IRS are allowed. In other words, by just going to work, Ms. Rodriquez has used in excess of what the Trustee argues is reasonable.

For transportation debtors estimated $1100. Of this $664 ($521 for debtors and 123 for the inlaws) is for gasoline and $436 for repairs. Using the Table 1400, the lines for a family of 5 (to represent debtors and 3 kids) and a family of 2 (to represent the older parents in the household) on the average fuel expense in 2017, nationwide is 4993 annually, or 416 per month. Gas prices in California are consistently 33% higher than the national average per the amounts provided by AAA. Applying a 33% correction to this average, yields $553 per month as an average. The balance of the excess can be explained by the commute of Ms. Rodriguez and the nature of living in Madera and having to drive to Fresno at times for medical and personal items and services.

The vehicle tags are $178.83 per month (see Decl. of Ms. Rodriguez, Exhibit A). This expense is dictated by the State of California. It is required to pay the tax in order to operate the vehicle, and therefore is reasonable and necessary.

As for the repairs and vehicles tags, these expenses are documented in the Declaration of Ms. Rodriguez. There are 5, soon to be 6 drivers. There are 6 vehicles. This is reasonable and necessary in order for everyone to be able to get around, go to school, get to work, to go visit the doctor, and to live in today's world. The average repair expense for a family of 5 plus a family of two is 1048 plus 938 = $1986. (Decl. of Labiak.) Debtors spent $1580 for repairs, and estimate $1500 per year for tires, for a

combined total of $3080 so they are above the average for 2017, which when updated for 2019 will probably be higher. Debtors are over the average on maintenance by $1094 annually, or $92 monthly.

The average for vehicle expense to purchase for a family of 5 and a family of 2 is 4401 + 5855 or $10,256 per year per Table 1400. (Decl. of Labiak.) This equates to $854.67 per month. Debtors per the plan are only spending a total of $270.86 per month on vehicle purchase. That is a difference of $584. In other words, by debtors spending the additional $92 monthly on maintenance, they are saving, and making available for creditors the difference, 584-92 = $492 for creditors. This shows how it is reasonable and necessary for the debtors to spend more than the average on vehicle repairs and maintenance as it allows them to spend less on car payments.

### 2. Insurance

Trustee lists insurance under line 15c as $633.36. Line 15c on Schedule J lists insurance as $498.10. It is assumed trustee also included in line 15d which is $135.26, which when added to $498.10, totals $633.36.

The insurance actual expenses and estimates is attached as Exhibit G. Insurance is required by law to drive a vehicle on the roads, therefore that makes it necessary. As to the reasonableness of the amount of insurance, debtors have a new teenage driver. This has caused debtors rates to increase significantly. Debtors have another teenage driver that will begin driving, this will cause our rates to increase significantly again. (See Decl. of Ms. Rodriguez). Debtors are above average for insurance, but it is reasonable as they have new teenage drivers.

As do debtors live in parents, they spend about $95 per month on insurance. The average for a family of two per Table 1400 is $82 per month in 2017. While slightly higher, this can be explained by inflation and is within the standard deviation for the numbers. As it is the average, that makes the number reasonable.

The expense for AAA is reasonable as it helps in preventing the above additional expense for vehicle purchases. By spending $40 a month on AAA, this helps prevent spending the average of $854 per month on new auto purchases. It is reasonable and necessary to spend $40 to help save $854 which in turns helps to provide more money for creditors.

### h. Out of pocket Medical expenses.

7

Proof of the actual payments and estimates of services needed is attached as Exhibit H. This has been detailed in the Decl. of Ms. Rodriguez. Mr. Rodriguez, is 100% disabled. One child requires glasses frequently. Two children require braces. The father-in-law has stenosis of the colon and spends out of pocket for care. The expenses are estimated to by $684. This is based on what is being spent now for ongoing care and what will be needed to be spent in the future, mostly focusing on dental care. It is reasonable and necessary to spend this money to allow ourselves to function in society.

The estimates for the dental work is provided in Exhibit X of the Second Declaration of Rodriquez. Mr. Rodriguez has dental work that estimates at up to $4188. (annualized over 3 years, is $116.) The children are under care that costs $134 and $180 per month.

The VA trips required for Mr. Rodriguez's care average out to $50 per month. The actual spent on the last trip in April was $159 (Second Dec. of Rodriguez). The glasses for one child due to his condition are more frequent than normal and are not fully covered by insurance. In the last year $490 was spent, which works out to $41 per month (Second Dec. of Rodriguez). In the last 3 months, $40 on average was spent on the prescriptions of the debtors, not including the in-laws that live with the debtors.

So this is $116 + 134 + 180 + 50 + 41 + 40 = $561. This does not include and doctor visits that are not dental related or for debtors VA trips. Debtors estimated $684 per month. The balance of $123 can be explained by the products required by the in-laws which would be in either the Wal-mart receipts or the Rite-Aid purchases in the bank statements and for doctor's visits demonstrated by the enclosed bill of $77.20 from Valley's children.

The documentation of the medical expenses shows that they are reasonable. They are necessary as without these expenses, debtors and their family will not be able to live a normal, relatively pain-free life.

### i. Food, clothing, and other items

The spending on food and clothing is attached as Exhibit I. While this comes in at under the standard in total, and trustee makes no mention of objecting to this category, the spending is being provided to further document it as actual. The reasonable of the expense is detailed in the first

Declaration of Rodriguez. Given the medical conditions of various family members, debtors lose the benefits of scale when preparing meals. It is necessary to eat, the expenses are proved, therefore this is reasonable and necessary.

**j. Childcare and children's education and cost.**

The showing of the expenditures is listed Exhibit J. (Sec. Dec. of Rodriguez.) This is an estimate as to what is spent for the children to attend various school functions. In addition, debtors pay cash to have the debtors' cousin watch the youngest daughter when needed. This expense for child care alone is the source of the $150 per month. It is necessary to pay someone to watch the debtors' youngest child and would be illegal to leave the child at home alone.

The debtors also have two children who are new drivers. One just completed drivers training, and the other is in driver's training. The cost of the class is $450. This is an additional, reasonable, and necessary expense to put the debtors' children on to the road as is needed for most every adult.

The national average for a family of five is $167.50 for just education, not including child care. (Decl. of Labiak). As debtors are below this number, the expenses are reasonable.

**k. Entertainment**

The entertainment expense was estimated at $500. This can be broken up into 2 parts. The first is for the pets. The attached Exhibit K to the declaration shows the expenses for food and supplies for the pets averaging $157 per month over the last year (Second Dec. of Rodriguez). This is the actual expenditure. The balance of $343 is found partially in the bank statements such as $9.99 per month for Prime Video or for eating out at a restaurant or from a portion of the Walmart receipts attached as Exhibit K (Second Dec. of Rodriguez). The exact amount from the Wal-mart receipts is impossible to documents as a portion of the Walmart expenses would be food, a portion clothing, a portion entertainment, a portion personal care items, and portions possibly in other categories. Other parts of the entertainment budget would be paid in cash such as a movie ticket and debtors did not think to save these. The amount is based on a good faith estimate as asked for in Schedule J.

The national average per Table 1400 for a family of five and a family of two combined is $7712 per year, or $643 per month. The debtors are claiming only $500 and the combined average is $643, and therefore as debtor is less than average, the amount is reasonable. As to necessity, entertainment is

needed for the health and welfare of everyone. Without pleasure and joy in life, what is the point of living? The expense works out to about $12.5 per person per week which is not a significant amount at all. This keeps the debtors working and budgeting and enables them to repay a portion to the debtors. Therefore it is needed.

### l. Charitable contributions

The charitable contributions are based on the declaration of Ms. Rodriguez. There are two portions of this. The first is from the parents who put $20 a week in the collection plate when they go to church. The debtors then give the daughter either $10 or 20 a week when she attends church on Wednesdays. Debtors do not have a tithing report and have testified honestly that this is what they and their family give. It is necessary for their spiritual well being. The money is also necessary to be given as this is how the churches operate and without donations, would close ending all the good they do provide, such as meals to the hungry.

As to the amount being reasonable, the bible asks for 10%. Debtors give less than this. The national average for a family of 5 per Table 1400 per year is $1737 in cash contributions, which works out to $145 per month. If you add in a family of two to account for the parents, this is an additional $2491, or $207 per month. (Decl of Stephen Labiak) This is a combined $352 per month. Debtors and the family are only contributing $150 per month. As the number is below the average by a significant margin, and not even close to 10%, this amount is reasonable.

### m. Contributions to other family members

The debtors on average estimate to spend $80 a month helping out other family members. This is usually in the form of direct payments to help out Ms. Rodriguez's sister. This is to help prevent her from becoming dependent on the government for support and to continue to contribute to society. This makes the expense reasonable and necessary. As this is an allowable expense on Schedule J that has its own line item, it can be presumed that using it is reasonable and necessary or otherwise there would not be a line for this category.

### n. Continuing Education

Debtor Ms. Rodriguez is a Respiratory Care Practitioner. This requires a licensing with the State of California that costs $275 (as of July 1, 2018, increasing to 300 effective July 1, 2019). In

Response to Trustee's Objection to Confirmation

addition, Ms. Rodriguez is required to take 30 continuing education units. In addition, Ms. Rodriguez is required to maintain various certifications including Basic Life Support Certification, Advanced Cardiac Life Support Certification, Pediatric Advanced Life Support Certification, and Neonatal Resuscitation Program Certification among other certifications. In addition, Ms. Rodriguez must be on a national registry as well. All of this is required for Ms. Rodriguez to continue to be employed as a nurse. This makes the expense as mandatory and necessary for the debtors.

As for reasonable, Ms. Rodriguez is not in charge of the licensing fees charged by the government and therefore those fees are reasonable. The cost of the Basic Life Support Class from the is $40. The Cost for Advanced Cardiac Life Support renewal is $170. The cost for Pediatric Advanced Life Support Certification renewal is $170. For the Neonatal Resuscitation renewal is $170. These classes total $550. There is also the continuing education estimated at $84.00 for 30 units that are required for employment. Adding in the cost of the renewal of $275 totals $825. This works out to $76 per month for the upcoming year. See Exhibit B, Decl. of Stephen Labiak for all of the class estimates for costs. Debtors estimated $40. This shows that the debtors estimate is reasonable. In addition, this does not even include payment for the national registry or any other classes that debtor may need to further her career.

**Conclusion:**

Debtor's have demonstrated how each and every expense is reasonable and necessary. In addition, the house payment has actually increased a bit which if amend on schedule J, would provide more expenses that are not available for unsecured creditors. Per the means test, debtors were not obligated to pay anything back to unsecured. The plan debtors propose will pay back a portion to unsecured creditors. We ask that this plan be confirmed and the objection be overruled.

8-1-19

Stephen L. Labiak
Attorney for the Debtors

11